# EXHIBIT A

1  | Aaron Bell
2  | Pro Se
3  | 1724 N Altamont
   | Spokane WA 99207
4  | abellrealtor@gmail.com
5  | 509-218-6810

FIL[ED]

APR 0 9 2021

TIMOTHY W. FITZGERALD
SPOKANE COUNTY CLERK

FILED

2021 APR -9  A 4: 06

TIMOTHY W. FITZGERALD
SPOKANE COUNTY CLERK

CN: 2120091332
SN: 3
PC: 58

**FILED**

APR 0 9 2021

TIMOTHY W. FITZGERALD
SPOKANE COUNTY CLERK

SUPERIOR COURT IN THE STATE

OF WASHINGTON JURISDICTION

9  | AARON L. BELL,
10 |
   |        Plaintiff,
11 |
   | vs.
12 |
13 | CITY OF SPOKANE
14 | J. CHRISTENSEN, D, DUNKIN
15 | J. CURTIS, E. KANNBERG, OFFICER
16 | PREUNIGER, UNKNOWN
17 | SUPERVISORS.
18 |        Defendant

Case No.: 21-00913-32

**SUMMONS**

19 | TO: MICHAEL C. ORMSBY CITY ATTORNEY AND

20 | NATHANIEL J. ODLE ASSISTANT CITY ATTORNEY.
21 |

22 |        808 W Spokane Falls Blvd

23 |        Spokane WA 99201
24 |
25 |

26 | TO THE DEFENDANT: A lawsuit has been started against you in the above-
27 | entitled court by Aaron Bell, plaintiff. Plaintiff's claim is stated in the written
   | complaint, a copy of which is served upon you with this summons.
28 |

SUMMONS - 1

In order to defend against this lawsuit, you must respond to the complaint by stating your defense in writing, and by serving a copy upon the person signing this summons within 20 days after the service of this summons, excluding the day of service, or a default judgment may be entered against you without notice. A default judgment is one where plaintiff is entitled to what he asks for because you have not responded. If you serve a notice of appearance on the undersigned person, you are entitled to notice before a default judgment
may be entered.

You may demand that the plaintiff file this lawsuit with the court. If you do so, the demand must be in writing and must be served upon the person signing this summons. Within 14 days after you serve the demand, the
plaintiff must file this lawsuit with the court, or the service on you of this summons and complaint will be void.

If you wish to seek the advice of an attorney in this matter, you should do so promptly so that your written response, if any, may be served on time.

This summons is issued pursuant to rule 4 of the Superior Court Civil Rules of the State of Washington.

Aaron Bell Plaintiff       Pro Se
1724 N Altamont St
Spokane WA 99207
(509)218-6810

Court Clerk

Date.

SUMMONS - 2

Aaron Bell
Pro Se
1724 N Altamont
Spokane WA 99207
abellrealtor@gmail.com
509-218-6810

RECEIVED

APR 1 3 2021

CITY CLERK'S OFFICE

SUPERIOR COURT IN THE STATE

OF WASHINGTON JURISDICTION

| | |
|---|---|
| AARON L. BELL, | Case No.: 21-00913-32 |
| Plaintiff, | |
| vs. | AMENDED COMPLAINT |
| CITY OF SPOKANE | |
| J. CHRISTENSEN, D, DUNKIN | |
| J. CURTIS, E. KANNBERG, OFFICER PREUNIGER, UNKNOWN SUPERVISORS. | |
| Defendant | |

TO: MICHAEL C. ORMSBY CITY ATTORNEY AND

NATHANIEL J. ODLE ASSISTANT CITY ATTORNEY.

808 W Spokane Falls Blvd

Spokane WA 99201

**IN THE WASHINGTON STATE SUPERIOR COURT**

**CIVIL DIVISION**

AMENDED COMPLAINT - 1

**Complaint for Damages under For Use of Excessive Force by Arresting Officers, Negligence or Gross Negligence, Reckless Indifference, Failure to Report Injuries, Assault & Battery, and Failure to Provide Adequate Medical Treatment, Failure to Train or Continue to Train Employees, Police Brutality, Constitutional Violations of the 4th ,8th, 14th Amendment of the US Constitution.  1ST Amendment right to free speech.**

Comes now **AARON L. BELL** *(Plaintiff)*, by and through PRO SE, and files this, his Complaint against

**J. CHRISENSEN, D. DUNKIN, J. CURTIS, SGT PREUNIGER, & E. KANNBERG, AND or UNKNOWN SUPERVISOR(S). *(Police Officers)*** (hereinafter **Defendant Officers***), and the **City of SPOKANE,** (hereinafter called **City Defendant**), Defendants, and in support hereof, Plaintiff would show unto the Court the following matters and facts:

## COMPLAINT

(1) a violation of rights protected by the Constitution or created by federal statute, (2) proximately caused (3) by conduct of a 'person' (4) acting under color of state law." Crumpton v. Gates, 947 F.2d 1418, 1420 (9th Cir. 1991).

AMENDED COMPLAINT - 2

1. This is a cause of action for damages for unlawful violation of civil rights under **42 U.S.C.A. § 1983, 42 U.S.C.A 1988, & 42 U.S. Code § 2000aa–6**

Plaintiff pleads that (1) the defendants acting under color of state law (2) deprived plaintiffs of rights secured by the Constitution or Federal Statutes.  Plaintiff claims all of his **"Clearly Established Constitutional Rights"**.

A. 4th Amendment Right to be secure in his person. (personal security)

B. 14th Amendment Right to Not to be deprived of my Life or Liberty without due process under the law.

C. 8th Amendment Right to free from Cruel and Unusual Punishment.

D. 1st Amendment Right to Free Speech.


The **right of the people to be secure in their persons**, houses, papers, and effects, against **unreasonable** searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the **persons** or things to **be seized**. The right to Equal protection under the law and the right to due process.

Gibson v. United States, 781 F.2d 1334, 1338 (9th Cir. 1986)

Ortez v. Wash. Cty., Or., 88 F.3d 804, 810 (9th Cir. 1996).

AMENDED COMPLAINT  - 3

Section 1983 provides a cause of action against persons acting under color of state law who have violated rights guaranteed by the Constitution. The Plaintiff claims his 14th Amendment right to Equal Protection under the law. Buckley v. City of Redding, 66 F.3d 188, 190 (9th Cir. 1995); Demery v. Kupperman, 735 F.2d 1139, 1146 (9th Cir. 1984).

Section 1983 can provide a cause of action against persons acting under color of state law who have violated rights guaranteed by federal statutes. 42 U.S.C. § 1983 (1982). Section 1983 states that "[e]very person who, under color of [state law], subjects, or causes to be subjected, any citizen ... to the deprivation of any rights . . . secured by the Constitution and laws, shall be liable to the party injured." Gonzaga Univ. v. Doe, 536 U.S. 273, 279 (2002); Blessing v. Freestone, 520 U.S. 329, 340–41 (1997); Pennhurst State Sch. & Hosp. v. Halderman, 451 U.S. 1, 28 (1981); Maine v. Thiboutot, 448 U.S. 1, 4 (1980); Henry A. v. Willden, 678 F.3d 991, 1005 (9th Cir. 2012); Cal. State Foster Parent Ass'n v. Wagner, 624 F.3d 974, 978–79 (9th Cir. 2010); AlohaCare v. Haw., Dep't of Human Servs., 572 F.3d 740, 745 (9th Cir. 2009); Ball v. Rodgers, 492 F.3d 1094, 1103 (9th Cir. 2007); Legal Servs. of N. Cal., Inc. v. Arnett, 114 F.3d 135, 138 (9th Cir. 1997).

A person deprives another of a constitutional right, "within the meaning of § 1983, 'if he does an affirmative act, participates in another's affirmative act, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made.'" Preschooler II v. Clark Cty. Sch. Bd. of Trs., 479 F.3d 1175, 1183 (9th Cir. 2007) (quoting Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978)); see also Lacey v. Maricopa Cty., 693 F.3d 896, 915 (9th Cir. 2012) (en banc); Stevenson v. Koskey, 877 F.2d 1435, 1438–39 (9th Cir. 1989); 21 Leer v. Murphy, 844 F.2d 628, 633 (9th Cir. 1988). "The requisite causal connection may be established when an official set-in motion a 'series of acts by others which the actor knows or reasonably should know would cause their actions to inflict' constitutional harms."

The plaintiff bears the burden of proving that the right allegedly violated was clearly established at the time of the violation; if the plaintiff meets this burden, then the defendant bears the burden of establishing that the defendant reasonably believed the alleged conduct was lawful. See Sorrels v. McKee, 290 F.3d 965, 969 (9th Cir. 2002); Trevino v. Gates, 99 F.3d 911, 916–17 (9th Cir. 1996); Browning v. Vernon, 44 F.3d 818, 822 (9th Cir. 1995); Neely v. Feinstein, 50 F.3d 1502, 1509 (9th Cir. 1995), overruled in part on other grounds by L.W. v. Grubbs, 92 F.3d 894 (9th Cir. 1996).

And other issues in this complaint.

AMENDED COMPLAINT - 5

**2.** Jurisdiction is invoked under Chapter 4.12 RCW

**3.** Venue is proper under Chapter 4.12 RCW

**4.** Plaintiff, **AARON L. BELL,** is a citizen of the United States and a resident of SPOKANE, SPOKANE COUNTY, WASHINGTON STATE. Plaintiff claims all rights and privileges granted him.

**5.** Defendants,

**CITY OF SPOKANE, J. CHRISTENSEN , D. DUNKIN , J. CURTIS, SGT PREUNIGER, E. KANNBERG & Unknown Supervisor(s) *(Officers) are** police officers employed by Defendant, the **City of SPOKANE**, and its **agents**, was at all times material acting under the scope of employment and under color of state law. With exception of actions of complaint that were unreasonable and violated Plaintiff Rights.

FACTS

**6.** Defendant **City** is a SPOKANE, WASHINGTON municipal corporation, and is charged with the duty to supervise, manage and control its

AMENDED COMPLAINT - 6

Police Department and administration to prevent the violation of the civil rights of its citizens.

**7.** Medical Staff at Spokane County Jail are Defendant City of Spokane's Agents and are paid by them for services. (Legal action may be filed at a later date.)

Municipalities and other local government units … [are] among those persons to whom § 1983 applies." Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690 (1978); see also Bd. of Cty. Comm'rs v. Brown, 520 U.S. 397, 403 (1997); Edgerly v. City & Cty. of San Francisco, 599 F.3d 946, 960 (9th Cir. 2010); Waggy v. Spokane Cty. Wash., 594 F.3d 707, 713 (9th Cir. 2010); Fogel v. Collins, 531 F.3d 824, 834 (9th Cir. 2008); Long v. Cty. of Los Angeles, 442 F.3d 1178, 1185 (9th Cir. 2006); Cortez v. Cty. of Los Angeles, 294 F.3d 1186, 1188 (9th Cir. 2002); Fairley v. Luman, 281 F.3d 913, 916 (9th Cir. 2002) (per curiam); Van Ort v. Estate of Stanewich, 92 F.3d 831, 835 (9th Cir. 1996).

Count One

**8.**    On or about AUGUST 23rd –AUGUST 24TH , at approximately 12:00AM, Plaintiff was arrested at 22W MAIN, SPOKANE, WA, within the city limits of SPOKANE.

AMENDED COMPLAINT - 7

**9.**     At the mentioned time and place, Defendant Officers, in full City police uniforms arrested and detained Plaintiff as he was illegally being detained by employees of Zola's Restaurant at 22 W Main St Spokane WA, RCW 9A.16.020 (4) Defendant Officers rolled Plaintiff onto his back plaintiff face down and handcuffed him. During seizure and handcuffing procedures officer did unreasonably kneel on Plaintiff back causing air to be expelled from his lungs. (Knocked the breath out of him) Plaintiff was completely exhausted due to prior beating from Zola's employees where he lost conciseness.  Plaintiff was restrained by handcuffs and was unable to move arms and hands. Thus, handicapping Plaintiff from completing normal tasks by design of restraints. Defendant officers verbally abused Plaintiff.  Plaintiff was ordered to "sit up" This seemed to Plaintiff an unreasonable request as he was handcuffed and laying on his right shoulder and right hip.  Plaintiff responded "Really" as he knew his was unable to complete the task. Defendant Officers then picked him up by the arms sat him on the floor and rested his back on a door jam.  (see Video Evidence)

**10.**     Plaintiff was then escorted to a Police Vehicle in front of the Restaurant at 22 W Main St Spokane Washington 99201.

AMENDED COMPLAINT  - 8

**11.**    At all times material, Defendant Officers had a duty under the Fourth, Eighth, and Fourteenth Amendments to the Constitution of the United States to allow Plaintiff to be secure in his person and be free from injury, refrain from the use of excessive force, to refrain from imposing cruel and unusual punishment, brutality, and right to due process while as Plaintiff was fully seized and was fully detained and controlled by Defendants or its agents. At no time during Plaintiff's seizure and detention by Defendant Officers Plaintiff did not pose any threats to Defendant Officers or the public, Plaintiff did not actively resist arrest, nor did Plaintiff attempt to flee. Defendant officers did not report any risks to their safety or others, Defendant Officers did not charge Plaintiff with resisting arrest, Defendant Officers did not report any attempts by Plaintiff to flee or escape custody.  At no time did any Prosecuting Attorney file charges for Assaulting an Officer, Resisting Arrest, or attempts to Flee or escape.  Plaintiff was unable to enter rear of vehicle per instructions due to his size and being handicapped by restraints.  Plaintiff made Defendant Officers aware of his difficulties verbally at every move. Plaintiff has zero experience in entries of small vehicle space with no use of hands and arms.  Vehicle seat and barriers obstructed Plaintiff's left foot to fully get in the vehicle between seat and forward barrier and the handcuffs and hands hit hard plastic rear seat while knees were firmly against forward barrier limiting Plaintiff's entry. Plaintiff continued to follow instruction to the best of his

AMENDED COMPLAINT - 9

ability and offered alternative solutions. Defendant officers gave orders and

Plaintiff followed them to the best of his ability while handicapped by restraints

with no use of his hand and arms.   Vehicle is a Midsized Ford Edge with

modifications to the rear seating area that limits entry. No side step or running

board is present on this vehicle, appears to be a product liability issue or wrong

tools for the application. One Officer on the scene was not wearing a body camera

per Policy and Procedure 703.2. (Officer Preuniger) This information would be

valuable to all parties involved if he had followed Policy.


   **12.**    Notwithstanding that duty, Defendant Officers were then and

there guilty of one or more of the following unreasonable acts; deprivations of

clearly established constitutional rights, negligence and/or gross negligence, or

willful and wonton misconduct, reckless indifference to plaintiff's medical needs,

battery and /or assault, and/or wrongful acts and/or omissions, failure to intervene

or act on Plaintiff's behalf, in that they:


   **A.**    Plaintiff was told to back up to the rear seat of the vehicle and move

onto the seat.  The seat was too high and Plaintiff attempted to use the floor of the

vehicle to leverage himself into the vehicle.  Plaintiff was instructed to not to

continue to use the floor of the vehicle to assist him. Plaintiff complied to the best

AMENDED COMPLAINT - 10

of his ability. Plaintiff had no use of his hands as they were handcuffed and was unable to physically complete the task as instructed.  Them, without warning, Plaintiff was unreasonably and violently jerked Plaintiff from his backside by handcuffs that were firmly secured to both wrists, using Excessive Force, into the vehicle from opposite side of vehicle.  This action of excessive force and use of handcuffs caused Plaintiff's Right Clavicle to brake and other diverse injuries to both his right and left shoulders.  **Plaintiff made Defendant Officers aware of injuries immediately.**  Plaintiff stated "why did you do that" "You dislocated my shoulder" "My shoulder is dislocated" and other statements/sounds that would lead Defendant Officer or any reasonable person to believe that Plaintiff was seriously injured.  Plaintiff's statements were loud enough for all Defendant Officers to hear. Plaintiff was unable to move and handicapped by restraints. Defendants continued further action against Plaintiff's person even though Plaintiffs cried out.  Defendant Officer Knew or Should have known that Plaintiff was seriously injured at that time.


      **B.**     At that time, all Defendant Officers should have STOPPED further actions and evaluated Plaintiff alleged injuries.  Any reasonable person would come to the aid of a person that stated that "you dislocated my shoulder" screams and cries out. Defendant Officers continued to use excessive force and/or

AMENDED COMPLAINT - 11

misconducted themselves, willful or wonton misconducted after Plaintiff stated

that his arm was broken or shoulder was dislocated knowing or should have known

that further action may cause and did cause further damage to Plaintiff's arms and

shoulders and caused significant pain and suffering. Defendant Officers brutally

unreasonably released seatbelt restraint which slapped Plaintiff in the face and then

applied excessive force directly into Plaintiff's broken shoulder further damaging

tendons and ligaments and causing extreme pain & additional injuries to Plaintiff.

Seatbelt restraint was fully over extended from the opposite side of vehicle and

forced into broken clavicle while Plaintiff was handcuffed, retrained, handicapped,

and unable to move. Defendant Officers further unreasonably pushed Plaintiff into

vehicle by the legs with Excessive Force which caused seatbelt which applied

additional presser on Plaintiff's injuries as he fell onto his back.  This caused a

significant amount of pain to Plaintiff and Plaintiff hands were restrained and was

unable to relive any pressure to his broken Clavicle.  Plaintiff Struggled to relive

his pain and suffering that Defendant Officer placed upon him but was unable to

do so. Seatbelt was unreasonably excessively forced into Plaintiff's Broken

Clavicle. Plaintiff cried out loudly. Defendant Officers shut both rear doors to limit

Plaintiff's cries of pain and suffering.  Video evidence shows officer Dunkin

laughing and Officer Christensen in the state of shock after this event took place.

AMENDED COMPLAINT - 12

**C.**      Officer Cutis was then instructed by Sgt Kannburg (supervisor or ranking Officer on the scene) to make him "sit up".  Officer Curtis opened the door and heard Plaintiff's screams.  Officer Curtis removed the seatbelt embedded deeply in Plaintiff's Right Clavicle.  Then Officer Curtis unreasonably grabbed Plaintiff by both shoulders using excessive force attempted to make Plaintiff sit up as ordered.  Officer Curtis knew or should have known that this unreasonable action would cause extreme pain and suffering to Plaintiff and did.  Defendant Officer must have been aware of Plaintiff's injuries as Defendant Officer discontinued his actions when he realized what he was doing to Plaintiff. (Further goes to knowing that significant injuries were "**known**") He refused to complete Sgt. Kannburg's unreasonable order to make Plaintiff sit up.   This action further injuries to Plaintiff's bones, ligaments, tendons.  All the time the plaintiff complained and cried out. Plaintiff remained handcuffed, retrained, and was unable to move.  Plaintiff's head was clearly hanging outside of the vehicle when Defendant Officer shut the door. This pushed plaintiff head and neck further into his injured shoulders.  Officer Kannburg can be seen in viedo eveidance asking other officer if they had a medical card. (further evidence that he believed that Plaintiff was injured) Plaintiff was attempting to find any leverage he could to get weight off of his injured shoulder but was unsuccessful. He eventually was able place his feet on the roof of the vehicle to push half of upper body off of the seat

AMENDED COMPLAINT - 13

and away from the door placing his head near the floor of the vehicle. Plaintiff continued to keep his feet on the roof of the vehicle to stabilize riding in the rear of the vehicle as he was sliding and bouncing around the rear at every corner. Officer Kannberg made the decision to take Plaintiff to Spokane County Detention Center rather that a Hospital. It is unclear if Officer Kannburg notified his supervisor prior to this decision.

    **D.**    All defendant officers failed report any injuries to supervisors, failed to properly list any significant injuries or suspected injuries in police reports. (Omission) Failed to report injuries to Supervisors, Internal Affairs, or meet any requirements of Spokane Police Department Police Manual Section 300. Defendants failed to properly report injuries to **any** person or government agency. All Defendant Officers at the scene failed to intervene or actually ordered subordinate officer to inflict pain and suffering. Some defendants failed to write reports. (Omission) Officers failed to follow-up with medical staff to Plaintiff's disposition of injuries. (Deliberate Indifference) Spokane Police Manual section 300 Use of Force. 300.5.1, Notifications to Supervisors, 300.2.1 Duty to Intercede/Ethical Intervention. 300.6 Medical Consideration. 300.5 Documenting Use of Force. Cannon One, 100.4 Constitutional Requirement. These and other Constitutional violations.

AMENDED COMPLAINT - 14

**E.**    Plaintiff further states a claim against Supervising Defendant Officer(s) that were on scene for deliberate indifference based upon the supervisor's direct knowledge of Plaintiff injuries and personally participation by directing subordinate Defendant Officers in unconstitutional conduct by his subordinates.

**F.**  Defendant Supervisor(s)  or (Ranking Officer) on the scene at the time of the event participated in and/or directed subordinate officers in their unreasonable conduct, witnessed constitutional violations, heard plaintiffs' complaints and cries of injuries, failed to intervene or terminate further violations, and were deliberately indifferent to Plaintiff's injuries and need for medical attention, failed to write or file a report of any Misconduct, or Use of Force, plaintiff's serious injuries, or constitutional violations. Defendant Supervisor(s) did order (or continued to ignore/ Directed) subordinate Officer to continue actions knowing that Plaintiff was clearly seriously injured, and in pain, and suffering. Unknown Supervisor(s) or senior supervisor(s) either were not properly informed of the Use of Force by their subordinates or failed to take actions as required if they were informed. Either or both are violations of the Spokane Police Manual 2019 sections 300 and violation of the constitution if the United States.

AMENDED COMPLAINT  - 15

Particularly protections against **unreasonable search and seizure**. These actions were **Unreasonable** and clearly established.

Plaintiff pleads that each Government-official defendant, through the official's own individual actions, has violated the Constitution."); Rodriguez v. Cty. of Los Angeles, 891 F.3d 776, 798 (9th Cir. 2018)

"Liability under [§] 1983 arises only upon a showing of personal participation by the defendant. A supervisor is only liable for the constitutional violations of … subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them. There is no respondent superior liability under [§] 1983." Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989) (citations omitted); see also Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009)

(1) His personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation.; King v. Cty. of Los Angeles, 885 F.3d 548, 559 (9th Cir. 2018) (same); Keates v. Koile, 883 F.3d 1228, 1242–43 (9th Cir. 2018) "'The requisite causal connection can be established … by setting in motion a series of

AMENDED COMPLAINT - 16

acts by others or by knowingly refus[ing] to terminate a series of acts by others,

which [the supervisor] knew or reasonably should have known would cause others

to inflict a constitutional injury.'" Rodriguez, 891 F.3d at 798 (quoting 22 Starr v.

Baca, 652 F.3d 1202, 1207 (9th Cir. 2011); see also King, 885 F.3d at 559.

(concluding that failure to intervene to stop alleged violation could be sufficient to

establish liability); Redman v. Cty. of San Diego, 942 F.2d 1435, 1446–47 (9th Cir.

1991)


        "A showing that a supervisor acted, or failed to act, in a manner that

was deliberately indifferent to an inmate's is sufficient to demonstrate the

involvement – and the liability – of that supervisor. Thus, when a supervisor is

found liable based on deliberate indifference, the supervisor is being held liable for

his or her own culpable action or inaction, not held vicariously liable for the

culpable action or inaction of his or her subordinates." Starr v. Baca, 652 F.3d

1202, 1207 (9th Cir. 2011) (holding that "a plaintiff may state a claim against a

supervisor for deliberate indifference based upon the supervisor's knowledge of

and acquiescence in unconstitutional conduct by his or her subordinates").

        Plaintiff was in fact "a prisoner" Plaintiff followed instructions of

Defendants to the best of his ability.  Plaintiff verbally expressed when he was

AMENDED COMPLAINT - 17

unable to meet commands. Plaintiff was handicapped and unable to use his hands and arms as they were in restraints.

**G.**    Defendants unreasonably willfully and wantonly recklessly with negligence or gross negligence used excessive force. Defendant Officers misconduct(s) directly resulted Plaintiff injuries.

**13.**    After wrongfully battering Plaintiff and causing him to sustain severe pain and suffering and severe and permanently severely injury, Defendant Officers wrongfully failed to assure that Plaintiff received adequate medical treatment, and instead brought Plaintiff to Spokane County Detention Center**,** where Plaintiff was evaluated by staff who looked at the injured area and stated there was nothing wrong despite continued complaints from Plaintiff that his arm/shoulder was broken. Medical Staff then wrote report that Plaintiff stated his shoulder was broken and failed to treat injuries or refer to personal that could. Medical Staff RN Plaintiff states "I broke my shoulder" (False Statement) (1) Defendant Officers failed to follow up with medical personal as to Plaintiff's medical condition. (2) Medical Personal and or Supervisors at the Spokane County Detention Center Failed to Report Plaintiffs significant injuries to any governing bodies of the Spokane Police Department, Defendant Officers Supervisors, or

AMENDED COMPLAINT - 18

Defendant Officers that delivered him there.  If any one of these 2 events took place a Supervisor or Defendant Officers should have had to take action under Section 300 Use of Force. SPD Policy and Procedure Manual.  **Significant Injuries** were reported by Physician Travis Dirks (MD) to Spokane County Detention Center at 8:29AM 8/24/2019 via fax from Providence Health Care. How this **important information** was distributed or if it was is unknown. (Discovery issues)

The government has an "obligation to provide medical care for those whom it is **punishing by incarceration**," and failure to meet that obligation can constitute an Eighth Amendment violation cognizable under § 1983. Estelle v. Gamble, 429 U.S. 97, 103–05, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976)

14.    Plaintiff remained in the Spokane County Detention Center for approximately 3-4 hours while constantly asking for an attorney, constantly complaining that his arm was broken, and needed medical attention. Medical Staff Knew or Should have known that these actions could have caused plaintiff additional injuries.  Extent of Plaintiff's injuries were unknow to Medical Staff and Plaintiff at that time. Plaintiff was then taken to hospital where an actual **Medical Doctor** confirmed Plaintiff's Claim.  Plaintiff's shoulder was broken. (Right

Clavicle) Plaintiff's family posted bail at approximately 1-2AM on Aug 24th after

they could not locate him. Defendant's Agent(s) paid the bill for the hospital

emergence visit. (Spokane County Detention Center) Spokane County Detention

Center did not have a physician on staff at that time and does not have the tools to

diagnosis a broken shoulder or arm. Plaintiff claim on its face was ignored.

**Plaintiff was "in fact" significantly injured.**


      Delay of, or interference with, medical treatment can also amount to

deliberate indifference. See Jett, 439 F.3d at 1096; Clement, 298 F.3d at 905;

Hallett, 296 F.3d at 744; Lopez, 203 F.3d at 1131; Jackson, 90 F.3d at 332;

McGuckin, 974 F.2d at 1059; Hutchinson v. United States, 838 F.2d 390, 394 (9th

Cir. 1988).


      "[D]eliberate indifference to a prisoner's serious illness or injury

states a cause of action under § 1983."); Jett v. Penner, 439 F.3d 1091, 1096 (9th

Cir. 2006); Toguchi v. Chung, 391 F.3d 1051, 1057 (9th Cir. 2004); Clement v.

Gomez, 298 F.3d 898, 904 (9th Cir. 2002); Hallett v. Morgan, 296 F.3d 732, 744

(9th Cir. 2002); Lopez v. Smith, 203 F.3d 1122, 1131 (9th Cir. 2000) (en banc);

Johnson v. Meltzer, 134 F.3d 1393, 1398 (9th Cir. 1998); Kelley v. Borg, 60 F.3d

664, 667 (9th Cir. 1995); Anderson v. Cty. of Kern, 45 F.3d 1310, 1316 (9th Cir.

AMENDED COMPLAINT - 20

1995); McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992), overruled on other grounds by WMX Techs., Inc. v. Miller, 104 F.3d 1133 (9th Cir. 1997

15.    The unreasonable failure of Defendant Officers or Defendant's Agents to assure that Plaintiff received adequate medical evaluation and treatment prior to being placed in a detention cell was in violation of Plaintiff's rights under the Fourth, Eighth and Fourteenth Amendments to the Constitution of the United States to be secured in his person, free from the excessive use of force, and to be free from reckless indifference to his serious medical needs and further violated the eighth amendment for cruel and unusual punishment and Plaintiff's right to be secure in his person.

**"A 'serious' medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'"** McGuckin, 974 F.2d at 1059 (quoting Estelle, 429 U.S. at 104); see also Jett, 439 F.3d at 1096; Clement, 298 F.3d at 904; Doty v. Cty. of Lassen, 37 F.3d 540, 546 (9th Cir. 1994).

16.    As a direct and proximate result of one or more of the said unreasonable wrongful acts or omissions to act of Defendant Officers and or its

AMENDED COMPLAINT - 21

agents, Plaintiff suffered significant and severe permanent injury to his person, pain, suffering, disability, loss of income, mental anguish, humiliation, and other diverse injuries.

17.    Defendant City failed to adequately train Defendant Officers in proper arrest and detention procedures, reporting procedures, and how to handle persons who have significant injuries that are in their custody as to ensure that Defendant Officers did not violate the rights of a citizen clearly established Federal and State Constitutional Rights. Failed to adequately supervise Defendant Officers in order to ensure that Defendant Officers did not violate the rights of a citizen to be receive adequate medical attention when needed.  Failure to train. There appears to be two supervisors at the scene that failed in their duties and obligations to Plaintiff. Unknown senior supervisors were either not informed or were derelict in their official duties if they were informed. **There are Supervisors that remain unknown**.

WHEREFORE, Plaintiff demands judgment against Defendants, and each of them, for their wrongful violations of Plaintiff's right to be free from the excessive use of force under the Fourth, Eighth, and Fourteenth Amendments to the Constitution of the United States, in the amount of $250,000 as and for

AMENDED COMPLAINT - 22

compensatory damages, punitive damages in an amount sufficient to deter such

wrongful conduct in the future, plus attorney fees and costs, as provided in 42

U.S.C.A. § 1988. Plaintiff demands trial by jury.

COUNT TWO

**RECKLESS INDIFFERENCE TO PLAINTIFF'S SERIOUS MEDICAL**

**NEEDS**

Plaintiff here re-alleges the allegations of Paragraphs 1-17 of Count One as

the allegations of this Count Two, as if fully set forth.

Physicians who contract with prisons to provide medical services are

acting under color of state law. See West v. Atkins, 487 U.S. 42, 53–54 (1988);

Lopez v. Dep't of Health Servs., 939 F.2d 881, 883 (9th Cir. 1991) (per curiam)

(hospital and ambulance service under contract with the state). Cf. Florer v.

Congregation Pidyon Shevuyim, N.A., 639 F.3d 916, 925–26 (9th Cir. 2011)

(distinguishing West and determining that contract chaplains were not state actors).

AMENDED COMPLAINT  - 23

**18.** When Plaintiff arrived at the Spokane County Detention Center the Police Vehicle door was opened by Deputy Sheriffs. Plaintiff immediately stated that his arm was broken and asked them to please not touch him.  He also asked that they allow him to attempt to exit the vehicle on his own.  They complied. Plaintiff painfully exited the vehicle. Any one of these persons knew or should have known that plaintiff was in extreme pain and distressed.  Plaintiff was handcuffed and had no use of his arms and hands plaintiff exited the vehicle in great pain.

**19.**    Medical Personal (Jessica Goodeill RN) at Spokane County Detention Center (City Defendants Agent) attempted to interrogate Plaintiff during examination of his medical condition and did make false statements.  Medical Personal continued to make false statements that Plaintiff broke his own Shoulder. Plaintiff corrected her. Plaintiff was in the state of "The state of Shock, in Pain, and Under Extreme Duress" as his arm was broken by Defendant officers approximately 15/20 min prior to his arrival. Plaintiff had also lost conciseness prior to police contact and suffered a concussion from previous assault.  Plaintiff **had not forgotten** how his injuries occurred at time of examination by medical staff.  Plaintiff did not see Officer that broke his arm as he was to his rear. Some Defendant Officers where present during the examination.  When Plaintiff invoked

his Miranda Rights and asked for an attorney, he was labeled uncooperative and

belligerent for not agreeing with medical personal as to how he was injured.  This

did not stop Medical personal from making false claims and reporting that Plaintiff

stated that he broke his own shoulder. Plaintiff was unreasonably **immediately**

**punished** and placed into a jail cell without further medical examination for asking

for an attorney.  (Delayed) Plaintiff was clearly in pain and also verbally expressed

this this to medical personal.  The Registered Nurse did examine Plaintiff's

shoulder. She states in her report "I broke my shoulder" No further information

given.  Belligerent and Uncoop.  This document is not signed, dated, nor is there a

time referenced. Medical person was able to take Plaintiff's temperature,

respiration and blood pressure as indicated in the unsigned intake document. As a

person begging for Medical treatment throughout the prior events, why would

Plaintiff be Belligerent?  She was obviously aware that Plaintiffs shoulder was

seriously injured or broken.  (Belligerent is a subjective term) Plaintiff was clearly

in pain and suffering.   Plaintiff couldn't have needed an attorney more than during

these events. Plaintiff was not allowed to contact an attorney.  Plaintiff was

punished for asking for an attorney. Medical staff simply refused Plaintiff medical

attention because he would not agree to how his shoulder was broken.  To the best

of Plaintiffs knowledge, there is not radiology equipment or physician at the

Spokane County Detention Center at that time.  RN would be unable to diagnose

AMENDED COMPLAINT  - 25

injuries if she believed or did not believe her own written false statement. Plaintiff should have been referred to Hospital at that time. No further information would have been required. Plaintiff stated that his arm was broken. How injuries occurred is irrelevant. Medical staff member is not a medical doctor (MD) Fact: Medical Staff at the Spokane County Detention Center is unable to diagnosis Plaintiff's specific complaint was in needs of medical treatment. Plaintiff should have been referred to hospital immediately. To the best of plaintiff knowledge Jessica Goodeill does not have the power or authority to arrest or apply discipline to detainees (More discovery issue here)

20.    Plaintiff was then placed in a jail cell for approximately 4 hours for invoking his Miranda Rights and asking for an attorney. Plaintiff cried out that he wanted an attorney and was in need of medical treatment many times while incarcerated. **(being punished)** When jail cell was opened 5 Deputy Sheriffs entered in further attempts to create duress and coerce Plaintiff further. Plaintiff was in fear for his safety after earlier battery and unable to move his right arm. Plaintiff thought that he was going to be assaulted further for asking for medical attention for his broken arm and an attorney. Medical Personal entered and examined Plaintiff **without any questions** and stated Plaintiff was to be taken to

AMENDED COMPLAINT - 26

Hospital for further examination.  (Different person did the examination at that time) Amanda Spayde RN

**21.**    When Plaintiff was asked how his arm was broken by Physician he was only allowed to tell part of the story.  Plaintiff was never allowed to contact an attorney as requested.  At all times Spokane County Jail Medical Personal and Physician were acting under the color of law and as Defendant Cities Agent. Interrogation and coercion by Medical Professionals are reprehensible and should never be tolerated or allowed. Plaintiff partially finished telling his story of how his arm was broken when he was commanded to "shut up" by Deputy Sheriff that had custody of him.  Plaintiff attempted to finish his story and was told to "shut up" again being spit on by Deputy Sheriff while he loudly and aggressively commanded approximately 2 inches from Plaintiff's face.  Plaintiff requested an attorney. The part of the story was at the point where Defendant Officer had broken my shoulder by jerking Plaintiff by the handcuffs thus breaking his shoulder. Physician and Deputy Sheriff left the room per physician request to discuss status. The bill for medical services was paid by Spokane County Detention Center thus making this person an agent of the City Defendant hired to do medical treatment of prisoners of the City of Spokane Police Department. Result of examination was Plaintiff's Right Clavicle was fractured.  (Broken)

AMENDED COMPLAINT - 27

Other diverse injuries would be exposed at later dated examinations by Orthopedic Surgeons **not in the employed or affiliated with Defendants**. How Plaintiff's injuries occurred is irrelevant to a medical prognosis.


 First Amendment right to free speech.

Title 18, U.S.C., Section 242 - Deprivation of Rights Under Color of Law

**Coercion RCW 9A.36.070**

Invoking Mariana Rights.


**22.** If the individual indicates in any manner, at any time prior to or during questioning, that he or she wishes to remain silent the interrogation must cease. If the individual states that he or she wants an attorney, the interrogation must cease until an attorney is present. At that time, the individual must have an opportunity to confer with the attorney and to have him or her present during any subsequent questioning.


**23.** Plaintiff requested video evidence from Spokane County Sheriff's office on two occasions and was denied the videos both times. Plaintiff has letters of denial from Spokane County Sheriff's office.  Upon the second request the

AMENDED COMPLAINT  - 28

response was the videos were deleted. Request for records on 9-3-2019 and second request on 12-19-2019.

WHEREFORE, Plaintiff demands judgment against Defendants, and each of them, for their violation of Plaintiff's rights under the Fourth and Fourteenth Amendments to the Constitution of the United States, the amount of $250,000 as and for compensatory damages, punitive damages in an amount sufficient to deter such wrongful conduct in the future, plus Plaintiff's attorney fees and costs as provided in 42 U.S.C.A. § 1988. Plaintiff demands trial by jury.

COUNT THREE

**MONETARY CLAIM AGANST DEFENDANT CITY**

Plaintiff here re-alleges the allegations of Paragraphs 1-23 of Count One as the allegations of this Count Three, as if fully set forth.

**24.**   Defendant City is a WASHINGTON STATE municipal corporation which operates, administers, maintains and controls the Spokane Police Department as one of its executive branches.

AMENDED COMPLAINT  - 29

25.     Defendant City has established policies and procedures for its

Police Department regarding the use of force, reporting injuries to supervisor, and

the need to not violate person Clearly Established Constitutional Rights in Spokane

Police Policy Manuals 2019. The Defendant City has produced Policies and

Procedure for themselves as well. May or May not have Policies and Procedures

set for its agents.  (discovery issues)


26.     In establishing these procedures, Defendant City had a duty

under the Fourth and Fourteenth Amendments to the Constitution of the United

States to refrain from enforcing  continuing in effect policies and procedures

and/or "Customs" , or lack of, that created a substantial likelihood that Persons

would be subjected to the use of excessive force by City's Police Department

officers, or policies and procedures or Customs which created a substantial

likelihood that the serious medical needs of prisoners or detainees would not be

treated with reckless indifference by its agents, servants and employees employed

by City's Police Department. Or further by ignoring Policy and Procedures

themselves. Failure to train or enforce these Policies and Procedures has resulted in

violations of Plaintiffs Clearly Established Constitutional Rights. All defendants

had a duty and a responsibility to follow these Clearly Established Policies and

AMENDED COMPLAINT  - 30

Procedures and not violate Constitutional Laws and rights of individuals they come in contact with.

27.    Notwithstanding its mentioned duties, Defendant City and its Officers and City Attorney's Office were guilty of one or more of the following wrongful acts or omissions to act in violation of the Plaintiff's Constitutional rights and Policy and Procedures that may have initiated complaints, in that it:

A. Allowed policies and procedures to continue in force and effect which resulted in the use of excessive force against Plaintiff, and Violations of Plaintiff's constitutional rights. **Failure to enforce** said Policies and Procedures. Failure to train Employes and Agents on Federal, State laws, and Constitutional Laws, and Policies and Procedures.

"A county is subject to Section 1983 liability 'if its policies, whether set by the government's lawmakers or by those whose edicts or acts ... **may fairly be said to represent official policy**, caused the particular constitutional violation at issue.'" King v. Cty. of Los Angeles, 885 F.3d 548, 558 (9th Cir. 2018) (quoting Streit v. County of Los Angeles, 236 F.3d 552, 559 (9th Cir. 2001)); Rivera v. Cty. of Los Angeles, 745 F.3d 384, 389 (9th Cir. 2014) ("[M]unicipalities, including

AMENDED COMPLAINT - 31

counties and their sheriff's departments, can only be liable under § 1983 if an

unconstitutional action 'implements or executes a policy statement, ordinance,

regulation, or decision officially adopted and promulgated by that body's officers.'"

(quoting Monell, 436 U.S. at 690)).

 

**B.**      Had a custom and practice of failing to independently and adequately

investigate complaints of excessive force and failure to train Municipal Employees

adequately. Had a custom of not following their own requirements. Not ensuring

that the Policies and Procedure that they impose on the Spokane Police department

are properly enforced.

 

      The plaintiff may also establish municipal liability by demonstrating

that the alleged constitutional violation was caused by a failure to train municipal

employees adequately. See City of Canton, Ohio v. Harris, 489 U.S. 378, 388–91

(1989); Garmon v. Cty. of Los Angeles, 828 F.3d 837, 846 (9th Cir. 2016); Flores

v. Cty. of Los Angeles, 758 F.3d 1154, 1158 (9th Cir. 2014); Price v. Sery, 513

F.3d 962, 973 (9th Cir. 2008); Blankenhorn v. City of Orange, 485 F.3d 463, 484–

85 (9th Cir. 2007); Long v. Cty. of Los Angeles, 442 F.3d 1178, 1186–87 (9th Cir.

2006); Johnson v. Hawe, 388 F.3d 676, 686 (9th Cir. 2004); Miranda v. Clark Cty.,

Nev., 319 F.3d 465, 471 (9th Cir. 2003) (en banc); Fairley v. Luman, 281 F.3d 913,

917 (9th Cir. 2002) (per curiam); see especially Bd. of Cty. Comm'rs v. Brown, 520 U.S. 397, 409–10 (1997) (discussing limited scope of such a claim). Such a showing depends on three elements: (1) the training program must be inadequate "'in relation to the tasks the particular officers must perform'"; (2) the city officials must have been deliberately indifferent "'to the rights of persons with whom the [local officials] come into contact'"; and (3) the inadequacy of the training "must be shown to have 'actually caused' the constitutional deprivation at issue." Merritt v. Cty. of Los Angeles, 875 F.2d 765, 770 (9th Cir. 1989) (internal citations omitted); see also Connick v. Thompson, 563 U.S. 51, 61 (2011) (stating, "To satisfy the statute, a municipality's failure to train its employees in a relevant respect must amount to 'deliberate indifference to the rights of persons with whom the [untrained employees] come into contact.' [] Only then 'can such a shortcoming be properly thought of as a city 'policy or custom' that is actionable under § 1983.'") (quoting City of Canton, 489 U.S. at 388). Note that "[a] municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." Connick, 563 U.S. at 61.

      **C.**    Had a custom and practice of failing to effectively discipline, train or retrain Police Officers that wrongfully utilized excessive force and failure to follow Policies and Procedures. Leaving opportunities for Police Officers to

AMENDED COMPLAINT - 33

**circumvent** Policies and Procedures to evade reporting violations of Use of Force that resulted in injuries in order to **protect themselves.**

      **D.**    Failed to establish appropriate policies and procedures to address and correct the repeated use or misuse of excessive force by police officers, constitutional violation in arrests and **use of handcuffs.**

      Prior to Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), and Ashcroft v. Iqbal, 556 U.S. 662 (2009), this court held that "a claim of municipal liability under [§] 1983 is sufficient to withstand a motion to dismiss 'even if the claim is based on nothing more than a bare allegation that the individual officers' conduct conformed to official policy, custom, or practice.'" Karim-Panahi v. L.A. Police Dep't., 839 F.2d 621, 624 (9th Cir. 1988) (quoting Shah v. Cty. of Los Angeles, 797 F.2d 743, 747 (9th Cir. 1986)); see also Evans, 869 F.2d at 1349; Shaw v. Cal. Dep't of Alcoholic Beverage Control, 788 F.2d 600, 610 (9th Cir. 1986) (**"[I]t is enough if the custom or policy can be inferred from the allegations of the complaint."**).

      **E.**    Allowed the continuance in force and effect of policies and procedures which failed to protect detainees who had sustained injury from the

AMENDED COMPLAINT - 34

reckless indifference of Defendant City's agents, servants and employees in its Police Department to their serious medical needs. Further failed to place policies and procedures for its agents. (Spokane County Detention Center) Municipal Employees are simply allowed to "dump" seriously injured persons there and possibly avoid reporting Use of Force.  (Discovery)

First, to be entitled to the presumption of truth, allegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively. Second, the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation. Starr v. Baca, 652 F.3d 1202, 1216 (9th Cir. 2011). In AE ex rel. Hernandez v. Cty. of Tulare, 666 F.3d 631, 637 (9th Cir. 2012), this court held that the Starr standard applied to pleading policy or custom for claims against municipal entities. Although the standard for stating a claim became stricter after Twombly and Iqbal, the filings and motions of pro se inmates continue to be construed liberally. See Hebbe v. Pliler, 627 F.3d 338, 342 (9th Cir. 2010) (as amended) (explaining that Twombly and Iqbal "did not alter the courts' treatment of pro se filings," and stating, "[w]hile the standard is higher

[under Iqbal], our obligation remains, where the petitioner is pro se, particularly in civil rights cases, to construe the pleadings liberally and to afford the petitioner the benefit of any doubt.

Spokane Police Manuals 2019

Discovery of any documents between conduct and reporting to city defendants, agents, or other agencies.

Plaintiff constitutional right to be secured in his person and the right to medical treatment.

27.    City Defendants failed to investigate Plaintiff's claims. Plaintiff filed a claim for damages per Spokane Municipal Code 04.02 in November 2019. This is required for a person to make a claim against the City of Spokane prior to the commencement of Filing a complaint with the Court Systems.  Per Code 04.02 the City has 60 days to respond to the claim.  The City Defendant defaulted and did not respond for approximately 90 days by USPS Letter from Alternative Service Concepts.  (City Defendants Insurer **not** the City of Spokane) The letter notates "Our Investigations" Meaning; Alternative Service Concepts. Not the City Defendant. This action is directly City Defendants indifference to plaintiff's claim of damages and shows indifference.

AMENDED COMPLAINT  - 36

**28.** At that time City Attorney's Office (Defendant City) **had not contact** the Internal Affairs Department of Spokane Police for investigation or cease of investigations, but instead sent the claim only to their third-party self-insurance company Alternative Service Concepts.

**29.** A Complaint was filed by Plaintiff in the United States District Court Eastern District of Washington on February 3rd, 2020. Documents were served to Defendants Officers and Defendant City on February 7th, 2020. (Case was terminated without prejudice.)

**30.** Plaintiff Spoke with Lt Wohl for the Internal Affairs Division of the Spokane Police Department on February 13th 2020. When asked if the City Attorneys' office had contacted his office concerning the Complaint Filed with the Federal Court. He Claimed no they had not. I asked if the Spokane Police Department had contacted his Department and concerning this issue and he said no, he had not been contacted. Plaintiff Again Spoke with Lt Cowles of the Internal Affairs Division in March 2021. I again asked if the Spokane Police Department or The City Attorney's office has ever contacted his Department concerning this matter. He sated no to both of Plaintiff's questions. No Supervisor of the Spokane

AMENDED COMPLAINT - 37

Police Department has E**ver Contacted** Plaintiff, Pre or Post, the filing of a lawsuit concerning issues in this complaint. Spokane Police Department Policy Manual 2019 Policy 300.7.2 (C). These failures by defendants leads Plaintiff to believe that no use of force was ever reported to **Unknown Supervisors** of defendant Officers. Or, if they were properly reported the **Unknown Supervisor that supervisor is required to contact "person (subject) to whom which Force was applied"**. This have never happened. Thus, leads Plaintiff to believe that either defendant officers were inadequately trained in reporting Use of Force applications or, **Unknown Supervisors** were derelict in their duties and/or were inadequately trained in their responsibilities. This leads to **failure to supervise**. Noting, when it became an **"actual fact"** that Plaintiff had significant injuries to whom was this information they reported to? (discovery) In addition, Unkown Supervisors may have turned a "Blind Eye" to the information or it was never reported to them at all.

Police Policy and Procedure manual 2019

209 Early Intervention Systems 209.7.1

The City Attorney's Office **shall notify the Internal Affairs Lieutenant** of all lawsuits filed against members concerning activities associated with their employment with the Spokane Police Department. Internal Affairs shall notify the appropriate Captain or equivalent command staff member. If necessary,

AMENDED COMPLAINT - 38

the Captain may meet with the City Attorney's Office for a briefing and disseminate relevant information to the member's chain of command.

Policy 300 Use of Force.

300.5.1 NOTIFICATION TO SUPERVISORS

Supervisory notification shall be made as soon as practicable following the application of force in any of the following circumstances:

A. **The application of force resulted in apparent injury to the subject** or unconsciousness (with the exception of minor marks on the wrist consistent with being handcuffed and/ or minor marks or abrasions to portions of the body consistent with prone handcuffing);

B. **The subject claims an injury resulted from a use of force, even if no injury is visible** (with the exception of minor marks on the wrist consistent with being handcuffed and/ or minor marks or abrasions to portions of the body consistent with prone handcuffing);

300.7 CHAIN OF COMMAND REVIEW OF USE OF FORCE

300.7.1 SUPERVISOR REPORTING

**When a supervisor becomes aware of an incident in which there has been a reported application of force the supervisor shall complete a Use of Force Report.** Even in the event that a supervisor is unable to respond to the scene of an incident involving the reported application of force, the supervisor is still

AMENDED COMPLAINT - 39

required to complete a Use of Force Report. Use of Force reports are required under the circumstances described in Section 300.5.1 Notification to Supervisors (intentional and unintentional firearm discharges will be reported in the Firearm Discharge BlueTeam incident report)

300.7.2 INVESTIGATION, DOCUMENTATION AND NOTIFICATION When completing a Use of Force Report the supervisor shall take the necessary steps to conduct a thorough investigation. **The supervisor shall:** A. Respond to the scene, when possible;

B. Review all documentation of the incident and make every reasonable effort to contact all involved officers;

C. Ensure identification of witnesses and other involved parties. **When possible, conduct civilian interviews of those subjects, including the subject to whom the force was applied;**

D. Ensure the collection of any appropriate evidence when applicable;

E. Ensure photographs are taken of all injuries and relevant items such as dirt stains on uniforms, tears in clothing, damage to equipment, etc.;

F. **In the event that the supervisor believes that the incident may give rise to potential civil litigation,** the supervisor shall notify the DSO or appropriate command staff member during normal business hours;

AMENDED COMPLAINT - 40

G. Attach all incident reports, the CAD incident history, Conducted Energy Weapon downloads, and a link to all officer-worn videos in Evidence.com;

H. Enter force options used by any officer who used reportable force. List other officers present as witness officers;

I. Provide a brief summary of the incident in Blue Team and attach a Use of Force Additional form with all other information;

J. Provide a brief comment stating whether the use of force was within policy and any possible training issues, unless the involved officer is of an equal or superior rank. If more detailed analysis is needed, include it in the Use of Force Additional report;

K. and **forward the Use of Force Report to Internal Affairs Group** in Blue Team. Spokane Police Department Spokane Police Department Policy Manual Use of Force Copyright Lexipol, LLC 2019/03/14, All Rights Reserved. Published with permission by Spokane Police Department Use of Force - 54 Internal Affairs will attach all photographs and recordings of radio traffic to the report. A member of Internal Affairs will verify that all relevant materials were attached to the case and forward it to the next person in the supervisor's chain of command for review.

300.7.3 REFERRAL TO INTERNAL AFFAIRS

AMENDED COMPLAINT  - 41

When there is an allegation, complaint, or a supervisor is concerned that a violation may have occurred, the **supervisor shall initiate an Internal Affairs Complaint** in Blue Team. The supervisor shall forward the Complaint and the Use of Force Report though Blue Team to the Internal Affairs Group and copy each member of the chain of command to include the Chief of Police in the routing.

300.2.1 DUTY TO INTERCEDE/ETHICAL INTERVENTION

Any officer present and observing another officer using force that is clearly beyond that which is objectively reasonable under the circumstances shall, when in a position to do so, intercede to prevent the use of unreasonable force. **An officer who observes another employee use force that exceeds the degree of force permitted by law should promptly report these observations to a supervisor.**

**31.** The City Defendant is required to contact at minimum Internal Affairs Division per 209.7.1 Spokane Police Policy and Procedure   Defendant City became unreasonably and deliberately indifferent to Plaintiff's Constitutional Rights and deliberately indifferent to Plaintiff claim for damages (City Code .04.02 and Federal Complaint) for his injuries by not properly investigating Plaintiff's cause of action, claims, and lack of reporting to Internal Affairs. This is obviously a **"Custom and or Policy"** of administration of City Defendants and shows

AMENDED COMPLAINT  - 42

indifference. City failed to train municipality officials in the proper handling of claims and reporting Lawsuits to the Internal Affairs Division of the Spokane Police Department.  This process leads **Defendant Officers** to **"know"** that no further investigations will be initiated by City Officials as a form of Official Policy or Custom.  Plaintiff did "state a claim to relief that is plausible on its face. "You broke my shoulder" "Take me to the hospital" Filed a Claim 04.02 and other actions. To the time of this complaint no action has been taken in any capacity by the defendants. (discovery)

**32.** Further, City Defendants failed to train Defendant Officers on Policy and Procedures in Cannon One, Sections 209, and 300 for Spokane Police Policy Manuals. (and others) Plaintiff would have to believe that because no reports of Use of Force were reported to Internal Affairs and Internal Affairs had no knowledge of an incident that Defendant Officers knew or should have known that they were required to notify supervisors per Policy and Procedure 300.5.1 and failed to do so.

(1) Therefor the training procedure **must** be **inadequate**. City officials are deliberately indifferent as they are not concerned if Defendant Officers followed **any** Policy or Procedures in the Spokane Pollice Manual or not.  They cannot and did not follow the Policies and Procedures themselves by not

AMENDED COMPLAINT  - 43

contacting Internal Affairs after lawsuit was filed in Feb 2020 per Policy and

Procedure 209.7.1 Rather than be objective, they passed a required Claim City

Ordinance 04.02 to their insurance company rather than address or review the

claim themselves.

(2) The city officials must have been deliberately indifferent "'to the

rights of persons with whom the [local officials] come into contact'"; and If the

Defendant Officer did not follow Policys and Procedure for one action and not

being disciplined, why would a reasonable person believe they would follow any

Policy or Procedures.  The only answers are;

(a) failure to train and/or

(b) persons that came in contact with Plaintiff are indifferent to his

need.

(3) the inadequacy of the training "must

be shown to have 'actually caused' the constitutional deprivation at

issue." Defendant Officers **"know"** that if they do not notify their Supervisor of

Use of Force no action will be taken. Or, Supervisor(s) did not take action and they

**"know"** that no further action will be taken. There has never been, to the best of

Plaintiff knowledge, a reporting to a supervisor in the Spokane Police Department

of any Injury or Use of Force by officers' present at the events of August 23rd 2019.

Defendant Officers have no fear of punishment and therefor can do anything in the

AMENDED COMPLAINT  - 44

field they like without disciplinary action. (running amuck) If there was a reporting to supervisors it would have been sent to the Internal Affairs Department of the Spokane Police Department. They have no such records.  Plaintiff is aware that Policy and Procedures of the City Defendant and its City's Agent (Spokane County Detention Center) may exist that; If a Detainee is delivered to the Spokane County Detention Center with **significant injuries** the SPD must take that person to the hospital themselves prior to intake.  Plaintiff clearly stated to Defendant Officers that his shoulder was broken and asked to be taken to the hospital.  On its face, Defendant Officer's would **have to** take Plaintiff's statements as true. Jeesica Goodeill RN of the Spokane County Detention Center (City's Agent) is clearly negligent.  She is not a physician and **does not have suitable/required tools to make a proper diagnosis of Plaintiff's actual claim.** This may be construed as malpractice. Plaintiff should have been referred to SPD to transport to hospital at that time.  Plaintiff injuries were so obvious that a lay person would have suspected he had a significant injury and need for medical treatment. (video evidence) These Policies and Procedures obviously (300.6 Medical Consideration and who was the **"primary handling officer"**) do not extend to the Spokane County Detention Center or its employees.  There appears to be a "disconnect" between Defendant Citys agent and SPD in Policy and Procedures, there is not a Policy and Procedure, or the Spokane County Detention Center is inadequately trained or supervised by

AMENDED COMPLAINT - 45

City Defendants. How important information confirming that Plaintiff **"in fact"** had a significant injury was distributed is in question.  What did the Spokane County Detention Center do with this important information?  **Plaintiff's actual serious injury was diagnosed and confirmed by a medical doctor.**  If this information goes "nowhere", any use of force issues a quashed and buried in the system. It is this official Policy or Custom. (Discovery) The Defendant Officers may have "known" and exploited this fact.

**33.** Plaintiff was seriously injured and City Officials failed to enforce Policies and Procedures and/or failed to train or failed to institute proper Policies and Procedures.  You can write Policies and Procedures, but if there is no enforcement or proper training, they are worthless and pose a **significant risk to public safety**.  Additionally, if no **Disciplinary Actions** are taken there are no Policy or Procedures.  Spokane Police Manual Policy 340 Disciplinary Policy. 34.3.5, B,D,H,P,S, 340.3.9 Supervisor Responsibility. A & B. Section 310, 340.4 Investigations of Disciplinary Actions. RCW 41.12.090.  To this date no disciplinary actions have been taken that Plaintiff is aware of.  (1) Failure of City Defendants to demand enforcement of Policies and Procedure is a Direct Cause of Plaintiff's injuries and Violation of his Clearly Defined Constitutional Rights. (2) Or, it is directly failure to train. Either 1, 2, or both makes the City Defendant

AMENDED COMPLAINT - 46

Indifferent to Plaintiff Injuries, medical needs, damages aused to Plaintiff, and Constitutional violations in this Complaint thus culpable. (3) Failure to demand Policies are followed and/or failed establish Policies and Procedures of its agents. Thus, **City Defendant Failed to supervise its agents**. (Discovery issues) Plaintiff is unable to located any Policies of Procedure for the Spokane County Detention Center.

34. Defendant City then turned a "blind eye" to the violations of Plaintiff's Constitutional Rights and claims of physical injuries. Defendant City know of such claims in Nov 2019 and failed to act. This demonstrates the City Defendants reflections of a "conscious choice" by the City Defendants Indifference to Plaintiff's Claims.  Spokane Police Internal Affairs (IA) did not hear of this Claim prior to February 13th, 2020 when Plaintiff called IA. IA had no information from either City of Spokane or SPD as of March of 2021. Plaintiff has letter from Alternative Service Concepts dated Jan 31st 2020 that details City Defendant's indifference and offer of $5000.00 to settle this complaint, while in the same letter, being threatened Plaintiff if he took legal action. There is no mention of Constitutional Violations from these sources, Spokane Police Department Supervisors Reporting Use of Force or Internal Affairs starting completing an

AMENDED COMPLAINT - 47

investigation. Alternative Service Concepts is an insurance company. Not the City of Spokane.

     "To satisfy the statute, a municipality's failure to train its employees in a relevant respect must amount to 'deliberate indifference to the rights of persons with whom the [untrained employees] come into contact.' Only then 'can such a shortcoming be properly thought of as a city 'policy or custom' that is actionable under § 1983.'") (quoting City of Canton, 489 U.S. at 388). Note that "[a] municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." Connick, 563 U.S. at 61.

     "Under this standard, a municipal defendant can be held liable because of a failure to properly train its employees only if the failure reflects a "conscious" choice by the government." Kirkpatrick v. Cty. of Washoe, 843 F.3d 784, 793 (9th Cir. 2016) (en banc). The indifference of city officials may be shown where, "in light of the duties assigned to specific … employees [,] the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policy makers of the city can reasonably be said to have been deliberately indifferent to the need." City of Canton, 489 U.S. at 390; see Long, 442 F.3d at 1186–87; Johnson, 388 F.3d at

AMENDED COMPLAINT - 48

686; Berry v. Baca, 379 F.3d 764, 767 (9th Cir. 2004); Lee v. City of Los Angeles, 250 F.3d 668, 682 (9th Cir. 2001); Oviatt v. Pearce, 954 F.2d 1470, 1477–78 (9th Cir. 1992); Merritt, 875 F.2d at 770; see also Henry v. Cty. of Shasta, 137 F.3d 1372, 1372 (9th Cir. 1998) (order) **(amending opinion to include statement that turning blind eye to constitutional violation can demonstrate deliberate indifference).**

**25.** Spokane Police Policy and Procedure Manual 2019 States the following;

Law Enforcement Code of Ethics.

Paragraph 2,

Cannon One 1.1, 1.2.

Cannon Two 2.1,2.2

Cannon Five

Cannon Six

Policy Law Enforcement Authority 100.4

Policy Law Enforcement Certification 102. 102.1

Policy Oath of Office 104.1.1

Policy Policy Manual 106, 106.4

Policy Organizational Responsibility 200. 200.2.3, 200.2.4

Policy Training 208. 208.3.2

Policy Early Intervention Systems 209. 209.6, **209.7.1,209.08**,

Policy Use of Force 300. 300.2, 300.2.1, 300.03, **300.5, 300.5.1, 300.6,**

**300.7, 300.7.1, 300.7.2 A-K 300.7.3,**

Policy Use of Force and Deadly Force Administrative Review 302.

3.2.1, 3.2.2, 302.3, 302.4, 302.5

Policy Control Techniques and Devices 308. 308.4. 308.4.4,

Policy Disciplinary Policy 340. 340.4

Policy Body Cameras 703. 703.1, 703.2, 703.3, 703.4, 703. 5.   Entire

Policy manual maybe used for other sections in this complaint.


**35.** Plaintiff received a letter from Assistant Police chief dated March

5th 2020 stating that Internal Affairs has suspended investigations of Plaintiff's

complaint due to pending civil action pending. Plaintiff never opened a complaint.

Defendants had over 5 months to complete or initiate (trigger) and investigation of

allegations.  No investigations were initiated or triggered by any Defendant in this

case. (to the best of his knowledge) Again, Internal Affairs states that they have

had no contact with the Police Department or with City Defendant concerning

issues in this complaint prior to Plaintiff's initial communication on February 13th

2020. Every municipal employee that the plaintiff came in contact with has turned

a "blind eye" to the issues in this complaint with exception of the Chief of Police and the Internal Affairs Department. (whom had started an investigation on their own that was terminated) This knowledge would reasonably infer that if any Use of Force by Police officers are not reported to supervisors and a civil action is filed, there would **never be an investigation** of the matter by the SPD or the City of Spokane. Essentially grid locking it within the systems of the SPD until deadlines and all responsibility or accountability has expired. Even though the City/SPD has Policies and Procedures in place that appear to be sufficient at first glance, none appear to have been followed.

Thus, it is implied that there is a **Blue Wall**

A deliberate and ironic statement being;

**"my hands are tied" "there is nothing we can do"**

But if the Plaintiff's hands are tied and his is limited in what he can do he is subjected to serious injuries, Police misconduct, his Constitutional Rights are violated, and not a person he has come in contact with is concerned. (and all other issues listed in this complaint)

The FBI and Police Ombudsman's offices made interesting comments as well. Oddly, they were the exact same verbiage. **"This appears to be a training opportunity"** Plaintiff is not interested in being injured during a

AMENDED COMPLAINT - 51

"Training Opportunity" Nor did he agree to be the subject of such an opportunity for the SPD. But both parties have concluded that training is inadequate by making this statement. (Discovery issues) Section 302.2 Review Board is to evaluate. These issues and concerns will never get that far in the SPD system without outside intervention, further training, or disciplinary action. **Epic failures at every opportunity to actually follow/enforce Policies and Procedures, or supervise at any level.** It is not the Plaintiff's responsibility to correct this misconduct. But it is the Plaintiff responsibility to file this complaint and believes, his **civic duty** to protect himself and others from these types of injustice and failures. To put it plainly, the Plaintiff's life has been intruded upon. His goal "now" is to have the Defendants significantly punished for their actions or failures to act.

36.     As a direct and proximate result of one or more of the foregoing unreasonable wrongful acts or omissions to act of Defendant **City,** the Plaintiff sustained a violation of his rights under the Fourth. Eight, and Fourteenth Amendments to the Constitution of the United States, severe and permanent injury to his person, pain, suffering, disability, loss of income, mental anguish, humiliation, and other diverse injuries. The punishments for these actions **MUST** be significant for the Defendants to effect change.

AMENDED COMPLAINT - 52

WHEREFORE, Plaintiff requests judgment against Defendant **City** in the amount of $500,000 as and for compensatory damages, plus attorney fees and costs as provided in 42 U.S.C.A. § 1988. Plaintiff demands trial by jury.

## COUNT FOUR

## STATE LAW CLAIM FOR COMMON LAW BATTERY

Plaintiff re-alleges the allegations of Paragraphs 1-36 of this Complaint as the allegations of this Count Four, as if fully set forth.

**37.**    At all times material, Defendant Officers were on duty as a uniformed City police officer and were unreasonably acting in the scope of their employment by Defendant City as a police officer for the city of Spokane, WA.

**38.**    Defendant Officers acts as described herein constitute a battery under the common law of, Washington. RCW 9A.36.031 (f)

**39.**    Said acts of Defendant Officers were done without cause or provocation by Plaintiff, and with intent to cause Plaintiff injury.

AMENDED COMPLAINT  - 53

**40.** As a direct and proximate result of Defendant Officers acts as described herein, Plaintiff suffered severe and permanent injury to his person, pain, suffering, disability, loss of income, mental anguish, humiliation and other diverse injuries.

RCW 9A.36.031 (F)

WHEREFORE, Plaintiff demands judgment against Defendant Officers and the Defendant City, and each of them, in the amount of $250,000 plus Plaintiff's costs of suit. Plaintiff further demands costs of medical expenses. Disciplinary action Defendant of Defendant Officers.

## COUNT FIVE

### CLAIM FOR NEGLIGENCE OR GROSS NEGLIGENCE OR WILLFUL AND WONTON MISCONDUCT

Plaintiff re-alleges the allegations of Paragraphs 1-40 of this Complaint as the allegations of this Count Five, as if fully set forth.

AMENDED COMPLAINT - 54

41.    At all times material, Defendant Officers, individually and as an agent, servant, and employee of Defendant City, had a duty to refrain from unreasonably causing injury to Plaintiff through negligence or gross negligence or willful and wanton misconduct.

42.    In breach of their duty to refrain from causing injury to Plaintiff through negligence, gross negligence or willful and wanton misconduct, Defendant Officers, as an agent, servant or employee of Defendant City, were guilty of one or more of the following unreasonable negligence or grossly negligent or with willful and wanton acts or omissions to act, in that Defendant Officers and or its agents.

A.    Willfully and wantonly or with negligence or gross negligence violently and unreasonably without warning jerked Plaintiff by the handcuffs with excessive force from his back without warning, cause or provocation, although Defendant Officer knew, or should have known, that such conduct posed a reasonable risk of causing serious injury to Plaintiff.  This action did cause serious injuries, substantial pain that persists to this day, and causes Plaintiff considerable suffering and mental anguish. Plaintiff has a constant reminder through pain and suffering.

AMENDED COMPLAINT - 55

**B.** Willfully and wantonly or with negligence or gross negligence released and watched seatbelt restraints slap Plaintiff brutally in the face and apply excessive force into Plaintiff's broken clavicle although Defendant Officers knew, or should have known, that such conduct posed a reasonable risk of causing additional serious injury and additional Pain and suffering to Plaintiff;

**C.** Willfully and wantonly or with negligence or gross negligence further unreasonably pushed Plaintiff into vehicle by the legs with Excessive Force Defendant Officers while seatbelt restraint applied additional excessive force into Plaintiff's broken Clavicle damaging tendons and ligaments. Seatbelt restraint was fully over extended from the opposite side of vehicle and forced into broken clavicle. Defendant officers knew or should have known this would cause and did cause additional injuries to Plaintiff. In video evidence Plaintiff clavicle can be heard braking with a popping sound.

AMENDED COMPLAINT - 56

**D.**   Willfully and wantonly or with negligence or gross negligence grabbed Plaintiff by the shoulders and used excessive force to push Plaintiff into vehicle in attempts to make Plaintiff it up as ordered Defendant Officers knew, or should have known, that such conduct posed a reasonable risk of causing additional serious injury to Plaintiff despite loud screaming and statements from Plaintiff that his arm was broken.  Defendant Officers could not have been unaware of Plaintiff's injuries at that time. Upon understanding this after initial action Defendant Officer discontinued his actions despite command to make Plaintiff "sit up" knowing that this was causing additional injuries and additional pain and suffering to Plaintiff.

RCW 9A.36.021 (f)

**E.**   Willfully and wantonly or with negligence or gross negligence struck Plaintiff in the head with car door although Defendant Officer reasonably knew, or should have known, that such conduct posed an unreasonable risk of causing serious injury to Plaintiff;

**F.**   Willfully and wantonly or with negligence or gross negligence although Defendant Officers knew, or should have known, that such misconduct posed a reasonable risk to themselves if they failed to meet Federal, State, or local

AMENDED COMPLAINT  - 57

Standard under Color of Law by not reporting injuries. All Defendant Officer knew, or should have known, that such conduct posed a reasonable risk to themselves if they **reported injuries to supervisors**, filed reports properly per Policy and Procedures, Properly listed injuries in police reports. Contacted or Reported Injuries to Supervisors. (Omission) Failed to report injuries to Internal Affairs or meet any requirements/standards of Spokane Police Department Police Policy and Procedure Manual Policy 300 and others. Defendant Officers failed to report injuries to any person of government agency. None of the Officers that participated in injuring or witnessed the injuries to Plaintiff properly reported the injuries or intervened to stop the actions of other officers after initial injury was reported by Plaintiff.  Defendant Officer actually ordered that plaintiff was to be subject to additional injuries and plain and suffering. Some defendant Officers and supervisors failed to report injuries entirely. (Omission) **One Defendant Officer Laughed.**


      **G.**    Willfully and wantonly or with negligence or gross negligence used excessive force in order to cause Plaintiff injury although Defendant **Officers** knew, or should have known, that such conduct posed a reasonable risk of causing serious injury to Plaintiff.

AMENDED COMPLAINT - 58

**H.**    Willfully and wantonly or with negligence or gross negligence unreasonably and recklessly placed Plaintiff in a detention cell for hours first without having Plaintiff examined and treated by **a physician** for the severe injuries sustained and reported by Plaintiff as a result of Defendants assaulting his person leaving him unsecured in this person.    Defendants Agents (medical Staff RN) continued this action for hours although Defendant Officers or Defendants City's Agents knew, or should have known, that such conduct posed a reasonable risk of causing additional serious injury and extends for a period sufficient to cause considerable pain and suffering to Plaintiff.    This was also distressing to Plaintiff as he did not know the extent of his injuries. If Plaintiff was not incarcerated, he would have taken himself to the hospital for evaluation. Any reasonable person would likely have assisted in getting Plaintiff proper medical attention. Failed to put properly Policies and Procedure in place for its agents as they did not cause further violation of persons Clearly Established Constitutional Rights.

**43.**    As a direct and proximate result of one or more of Defendant City's Officers or Defendant City's agents' wrongful acts or omissions to act, Plaintiff sustained severe and permanent injury to Plaintiff's person, pain, suffering, disability, loss of income, mental anguish, humiliation and other diverse injuries.

AMENDED COMPLAINT - 59

**44.**     Each Defendant Officer, its agents, and other officers had a duty to secure Plaintiff his person and protect his Civil Right and Constitutional Rights, ensure his right to proper medical treatment and/or intervene  during events and failed to do so.

WHEREFORE, Plaintiff demands judgment against Defendants, and each of them, in the amount of $250,000 as and for compensatory damages, punitive damages against Defendants, and each of them, in an amount sufficient to deter the described wrongful conduct in the future, and Plaintiff's costs of suit. Plaintiff demands trial by jury.

This cause for action is 4 counts at $250,000 for each and $500,000 for Complaint 3.  Total $1,500,000.

Respectfully submitted,

AMENDED COMPLAINT  - 60



**PLAINTIFF**

OF COUNSEL:

**Aaron Bell Pro Se**

1724 N Altamont

Spokane WA 99207

509-218-6810

AMENDED COMPLAINT  - 61